Argued and submitted April 2, decision of Court of Appeals reversed, judgment of circuit court reinstated August 27, 1985

BEAVER,
*Plaintiff,*

*v.*

PELETT et al,
*Respondents on Review,*

*v.*

U-HAUL CO. OF OREGON et al,
*Third-Party Defendants.*

STATE OF OREGON, by and through its
DEPARTMENT OF TRANSPORTATION,
HIGHWAY DIVISION,
*Petitioner on Review.*

(A8109-05780; CA A29965; SC S31475)

BEAVER,
*Plaintiff,*

*v.*

PELETT et al,
*Respondent on Review,*

*v.*

U-HAUL CO. OF OREGON et al,
*Third-Party Defendants,*

STATE OF OREGON, by and through its
DEPARTMENT OF TRANSPORTATION,
HIGHWAY DIVISION,
*Petitioner on Review.*

(A8109-05808; CA A29965; SC S31475)

705 P2d 1149

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Philip Schradle, Assistant Attorney General, Salem.

James H. Clarke, Portland, argued the cause for respondent on review.

LINDE, J.

Lent, J., filed a specially concurring opinion.

Peterson, C. J., filed a dissenting opinion, joined by Roberts and Jones, JJ.

**LINDE, J.**

The present case and two others decided today, *Scovell v. TRK Trans, Inc.,* 299 Or 679, 705 P2d 1144 (1985) and *Royal Ins. Co. v. State Trans. Comm.,* 299 Or 688, 705 P2d 1144 (1985), involve the question whether the State of Oregon may be liable for contribution to a defendant in a tort case in which the state would be liable directly to the plaintiff, and if so, whether the third party plaintiffs' complaints adequately pleaded the prerequisites for obtaining contribution from the state.

In September, 1981, the personal representative of Larry and Kevin Beaver brought wrongful death actions against Pelett and Recobs stemming from an automobile accident on February 9, 1981, in which the Beavers were killed by a truck driven by Recobs, an employee of Pelett. On November 17, 1981, defendants notified the Attorney General of impending third party complaints against the State of Oregon. These complaints were filed within a week, alleging negligent highway design and maintenance. The cases were consolidated. The trial court granted the state's motion for summary judgment, concluding that the state has not consented to be sued for contribution, and that in any event the state "was not given notice of any claim asserted in plaintiffs' complaints against defendant/third party plaintiffs, as would be required by the Tort Claims Act before the State could be liable to plaintiffs." The Court of Appeals reversed and remanded, 71 Or App 226, 691 P2d 160 (1984), relying on its contemporaneous decision in *Scovell v. TRK Trans, Inc.,* 71 Or App 186, 691 P2d 911 (1984). We allowed review in this case along with *Scovell* and *Royal Ins. Co. v. State Trans. Comm.,* 71 Or App 221, 691 P2d 915 (1984).

The decision depends on two statutes, the Tort Claims Act, ORS 30.260 to 30.300, and the statute providing for contribution among tortfeasors, ORS 18.430 to 18.460.

The Oregon Tort Claims Act gives the state's consent to being held liable for tort claims, but the state argues that a claim for contribution is not a tort claim. The Court of Appeals rejected this argument in *Scovell v. TRK Trans, Inc., supra,* on the grounds that, although the contribution claim itself is not a tort claim, it is a claim arising from the state's liability for a tort. We agree with the Court of Appeals.

ORS 18.440(1) provides:

> "Except as otherwise provided in this section, where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them. There is no right of contribution from a person who is not liable in tort to the claimant."

To seek contribution for or against the state presupposes that the state has "become jointly or severally liable in tort" for an injury. ORS 30.265(1) provides that, subject to specified limitations, the state "is liable for its torts and those of its officers, employes and agents acting within the scope of their employment or duties * * *." The operative words are "is liable for its torts"; they do not say that the state is liable for its torts only to the victim of the tort. When the legislature later, in ORS 18.440, enacted rules for sharing liability by way of contribution, nonetheless it is liability "in tort for the same injury to person or property or for the same wrongful death" that is being shared.

■     The state also argues that it is not a "person" within the meaning of ORS 18.440(1), because ORS 174.100 provides that in Oregon statutes, "unless the context or a specially applicable definition requires otherwise * * * '[p]erson' includes individuals, corporations, associations, firms, partnerships and joint stock companies." We note that this directive uses the verb "includes," not "means," so that it is not on its face exhaustive. The "unless" clause serves to exclude one of the listed types of "person" or to include other types not listed when the context or another definition so requires. The larger "context" here includes the Tort Claims Act, which predated ORS 18.440(1), and as the Court of Appeals pointed out, if the state is not a "person" within ORS 18.440, it also could not recover contribution from others who share its liability for a tort. We agree with the Court of Appeals that the state is a "person" within ORS 18.440.

■     The state argues that the contribution statute should be strictly construed because it is "in derogation of the common law." This formula, expressing in part resistance to changes in existing law and in part the profession's historical preference for caselaw over legislation, is long overdue to be

put to rest. Every statute "derogates" from prior law, if it is adopted for any substantive reason at all. The "no-derogation" formula, coupled with the tendency to treat statutes, when possible, as codifications of prior caselaw, denigrates and confines the role of legislative examination, discussion, and enactment of public policies in those fields of law that traditionally have developed in private litigation. The statutes themselves direct, to the contrary, that "[i]n the construction of a statute the intention of the legislature is to be pursued if possible," ORS 174.020, and "where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all." ORS 174.010.

The Court of Appeals correctly concluded that the state may be subject to a right of contribution. But ORS 18.440(1) provides for contribution only if the state has "become jointly or severally liable in tort * * *. There is no right of contribution from a person who is not liable in tort to the claimant." We turn to the role of timely notice to the state in determining whether the state has become so liable.

ORS 30.275, at the time relevant to this case, provided:

"(1) Every person who claims damages from a public body or from an officer, employe or agent of a public body acting within the scope of employment or duties for or on account of any loss or injury within the scope of ORS 30.260 to 30.300 shall cause to be presented to the public body within 180 days after the alleged loss or injury a written notice stating the time, place and circumstances thereof, the name of the claimant and of the representative or attorney, if any, of the claimant and the amount of compensation or other relief demanded. Claims against the State of Oregon or a state officer or employe or agent shall be presented to the Attorney General * * *.

"(2) When the claim is for death, the notice may be presented by the personal representative, surviving spouse or next of kin * * * within one year after the alleged injury or loss resulting in such death."

The contribution plaintiffs' complaint alleged that they "notified third-party defendant State of Oregon of this claim." They assert that timely notice of a third party's claim for contribution invokes the state's liability even when the original plaintiff makes no claim against the state.

The "person who claims damages" and who "shall cause" the written notice of claim to be presented under ORS 30.275(1) (1979), meant the person who has suffered "any loss or injury within the scope of ORS 30.260 to 30.300," that is to say, the original tort claimant or his representative. Because the claim in this case would be for wrongful death, the plaintiff had one year within which to present it. ORS 30.275(2) (1979). As previously stated, we agree with the Court of Appeals that a claim for contribution is not itself a tort claim. A defendant who cannot persuade a tort plaintiff to give notice of a claim against a public body or officer who may share liability for the plaintiff's injury therefore is left to argue either that notice is not essential to liability (though it may be essential to a plaintiff's right to recover damages), or that timely notice by a third party plaintiff claiming contribution satisfies the policy purposes of the notice requirement even though not its text.

The first argument, in essence, maintains that statutory notice is immaterial to a claim for contribution. It rests on the premise that the state, or any defendant, becomes "liable" to the injured person at the time of the injury, although lack of timely notice or other obstacles may make the defendant legally immune against the recovery of damages. Accordingly, contribution plaintiffs contend that whether the state became liable to the original plaintiffs must be determined as of the time when they were killed. The state maintains that it does not become liable for a tort until the injured party gives the required notice, and that this did not happen here.

The jurisprudential conundrum whether the state becomes "liable" at the time of a tort though it is immune in the absence of notice seems to depend on whether liability is the norm and immunity the exception or vice versa. Perceptions have changed over time, like Mr. Escher's famous pictures in which birds fade into background while the space between them emerges as fish. Verbally, governmental "immunity" suggests a special exception from a general rule of liability, and modern attitudes toward governmental and other tort immunity correspond to that view. *Cf. Winn v. Gilroy,* 296 Or 718, 681 P2d 776 (1984) (parental immunity). Once past the hurdle of immunity, tort claims against government ordinarily follow the same substantive law applied to private parties rather than special statutory definitions of

governmental liability. *See Dowers Farms v. Lake County,* 288 Or 669, 680, 607 P2d 1361 (1980).

Earlier, however, governmental liability was regarded as a special waiver of a general rule of immunity. If liability were assumed to be the rule and immunity a special defense, one would expect that immunity would have to be pleaded and proved. But prior decisions of this court have followed the opposite view of Oregon's Tort Claims Act, placing the burden on claimants to bring themselves within the statute. "The pleading and proof of notice sufficient to satisfy the requirements of ORS 30.275 [are] a mandatory requirement and a condition precedent to recovery under the Oregon Tort Claims Act," Justice Tongue wrote for the Court in *Urban Renewal Agency v. Lackey,* 275 Or 35, 40, 549 P2d 657 (1976), noting with apparent approval that the trial court had required the tort claimants to amend their pleadings to allege the requisite notice. Earlier, in dealing with a statute requiring speedy notice of a particular kind of claim against a private defendant, the court distinguished negligence actions against municipal corporations on the grounds that such actions were a "creation of the legislature" rather than ordinary common law. *Cross v. Harris,* 230 Or 398, 402, 370 P2d 703 (1962), *quoting Loe v. Lenhardt,* 227 Or 242, 256, 362 P2d 312 (1961). This view of the Tort Claims Act contradicts letting a tort defendant base a demand for contribution on a claim of government "liability" to the plaintiff of which the government did not receive timely notice.

■　Of course, the conundrum of "liability" and "immunity" is not one of abstract legal theory. We are interpreting whether the state became "liable in tort" for the wrongful death of plaintiff's relative as those words are used in ORS 18.440 and in the Tort Claims Act. ORS 30.265(1) provides that a public body "is liable" only "[s]ubject to the limitations of ORS 30.260 to 30.300." The Court of Appeals held that those opening words of ORS 30.265 refer only to the classes of claims excluded by ORS 30.265(2) and (3), and that lack of notice under ORS 30.275 only prevents "actions." But ORS 30.265 refers to limitations stated throughout ORS 30.260 to 30.300, not only those stated elsewhere in ORS 30.265 itself. Timely notice is prominent among those limitations. We do not believe that the legislature intended a public body to become indirectly liable to a third party for an alleged tort of

which it had no notice and for which the original injured party therefore could not recover damages.

If timely notice is essential, the second possible argument is that notice by a third party plaintiff seeking contribution satisfies the policy objectives of the notice requirement and therefore should be treated as the functional equivalent of notice by the tort plaintiff. This is not a claim that there has been actual compliance with ORS 30.275 but that the court should apply the statute by analogy to a third party plaintiff's claim for contribution. This approach has been adopted in decisions from several other jurisdictions, including Minnesota. The Oregon Tort Claims Act was based on Minnesota's act, and counsel in the companion cases draw to our attention that when the Oregon act was before the legislature, the Minnesota Supreme Court had recently allowed a contribution claim against a city by a defendant who had given the city timely notice, despite the city's objection that the injured party had not done so. *White v. Johnson,* 272 Minn 363, 137 NW2d 674 (1965).

The state's briefs, somewhat incautiously, do not respond to the discussion of the Minnesota law. *White v. Johnson,* much like the present case, involved a driver who was sued for damages and claimed that the collision was caused by road conditions resulting from governmental negligence. The Minnesota court began with the observation that "[c]onceptually, the giving of notice is an essential element of the cause of action, but realistically, because of the preexisting right and duty, liability is created at the instant the tort is committed." 272 Minn at 370, 137 NW2d at 679. Granting the greater rhetorical appeal of "realism" than of "conceptual" reasoning in the law, it might seem more realistic that notice is an essential element of a claimant's right to recover damages, and merely conceptual to say that the state is liable without notice. Adjectives will not resolve the issue. More to the point, the Minnesota court itself only held that a contribution claimant may satisfy the notice requirement, not that such a claimant may rely on a government's liability "created at the instant the tort is committed" without any need for timely notice at all. *See American Auto. Ins. Co. v. City of Minneapolis,* 259 Minn 294, 107 NW2d 320 (1961).[1]

---

[1] The Minnesota court later divided on the precise present significance of its

■     Rather, the *White* court's explanation for rejecting the city's argument that the statute required notice from the injured party appears in this passage:

> "We believe such a construction would be unwarranted and unfair. The statute contains no such requirement expressly or by fair implication. Rather its broad language indicates that any person may claim damages for any loss occasioned by negligence. At the very least it does not exclude a claim for indemnity or contribution against the city as a joint tortfeasor. The purpose of the statute is to enable the municipality to promptly investigate, while witnesses are available and before conditions have changed, to ascertain the existence and extent of any liability in order to prevent needless litigation by settlement of meritorious claims. Obviously, this purpose is served as well by notice from a joint wrongdoer as from an injured party. Further, to hold that one seeking indemnity or contribution could not give effective notice would make his rights thereto dependent upon the whim of the injured person."

272 Minn at 372, 137 NW2d at 680 (footnotes omitted). We are not unsympathetic to the Minnesota court's policy preference. But, as stated above, we think the terms of *former* ORS 30.275(1) contemplated notice from the person claiming to have suffered "loss or injury," not from someone from whom the injured person has claimed tort damages. Nor can we take for granted that the legislature would have considered it bad policy to leave the decision whether to sue the government to the choice, or "whim," of the injured person, had the question been considered. Although *White v. Johnson* was decided before enactment of the Tort Claims Act, we find nothing to show that those who prepared or discussed the proposed act knew of the decision. As Justice Tanzer wrote for the court in another contribution case:

> "Minnesota has no contribution statute, but recognizes a common law equitable right of contribution which requires common liability to the claimant * * *.
>
> "The Minnesota court dealt with an equitable cause of action and fashioned a remedy to reach an equitable result. In

---

*White* decision in holding that noncompliance with a different notice requirement did not prevent a contribution claim against a private business. *Hammerschmidt v. Moore,* 274 NW2d 79 (Minn. 1978).

contrast, we deal with a cause of action created and defined by statute."

*Blackledge v. Harrington,* 291 Or 691, 695 n 3, 634 P2d 243 (1981). As in that case, "we are not free to amend" the law, here ORS 30.275(1), to "reach an equitable result."[2]

The Chief Justice's opinion would reach a different interpretation of the notice requirement because *former* ORS 30.275(1) covered persons claiming damages "on account of" as well as "for" losses caused by the state's torts. He says, correctly, that the words should not be omitted or treated as duplicative but given effect. We have carefully considered those words and reached the conclusion that they were used to refer to claims by personal representatives of tort victims, claims which would seem to be more accurately described as claims "on account of" injuries than "for" injuries.

The decision of the Court of Appeals is reversed and the circuit court's judgment is reinstated.

**LENT, J.,** specially concurring.

The majority holds that the state may be liable for contribution under ORS 18.440(1) but that the trial court did not err in allowing summary judgment for the state because of the failure to satisfy the requirements of ORS 30.275. I disagree with the first holding and agree with the second. See my separate opinion in *Scovell v. TRK Trans, Inc.,* 299 Or 679, 705 P2d 1144 (1985), for my view on the first holding.

I would add a further observation about the record in this case. The contribution (third party) plaintiffs had filed a second amended third party complaint against the state for contribution. The state filed a motion for summary judgment on the following grounds:

---

[2] In *Scovell v. TRK Trans., Inc.,* 71 Or App 226, 691 P2d 160 (1984) and *Royal Ins. Co. v. State Trans. Comm.,* 71 Or App 221, 691 P2d 915 (1984), the complaints for contribution were further insufficient in failing to allege that third party plaintiff's settlement with the original plaintiffs extinguished the state's liability, as required by ORS 18.440(3). In the present case, the original plaintiffs' claims were not settled at the time the trial court granted the state's motion for summary judgment for lack of proper notice to the state under the Oregon Tort Claims Act. An amended judgment was entered after the settlement, but the court had already decided the issue of notice without regard to the effect of the settlement on the pleadings.

(1)  There had been no timely notice under the Oregon Tort Claims Act.

(2)  The state had not consented to be sued for contribution.

(3)  The second amended third party complaint failed to state ultimate facts sufficient to constitute a claim.

The trial court allowed the motion for summary judgment and on June 27, 1983, judgment was entered for the state. That judgment did not comply with ORCP 67B. and ORCP 70.

On August 29, 1983, the contribution plaintiffs filed a motion to modify the June 27, 1983, judgment to comply with ORCP 67B. and 71B. so as to make the judgment appealable. Accompanying that motion was an affidavit that the underlying claims of plaintiffs had been settled by the contribution plaintiffs. The contribution plaintiffs did not ask leave of court to file, and did not file, a supplemental complaint to allege the settlements, the reasonableness of the settlements and the extinguishment of the state's liability by the settlements.[1] *See* ORS 18.440(3).

**PETERSON, C. J.,** dissenting.

At the time relevant to this case, ORS 30.275(1) provided:

> "Every person who claims damages from a public body * * * *for or on account of* any loss or injury within the scope of ORS 30.260 to 30.300 shall cause to be presented * * * a written notice * * *." (Emphasis added.)

The statute referred both to claims of damages *for* an injury and claims *on account of* an injury. The second phrase is not merely a synonym for the word "for." That would make it surplusage. I would hold that a claim for contribution is "on account of" an injury.

ORS 174.010 admonishes us not to omit words from a statute but to "give effect to all." *See 1000 Friends of Oregon v. Wasco County Court,* 299 Or 344, 703 P2d 207 (1985); *Blyth & Co., Inc., v. City of Portland,* 204 Or 153, 159, 282 P2d 363, 366 (1955). There is precedent for interpreting the phrase "on

---

[1]The record discloses a letter sent from contribution plaintiffs to the state containing details of the settlement of the underlying claims, but even that letter makes no claim that the state's liability had been extinguished by the settlements.

account of" to refer to a party who suffered a loss as a result of the injury to that person, for instance a husband whose wife was injured by the defendant. *See Basler v. Sacramento Electric, Gas & Ry. Co.*, 166 Cal 33, 36-37, 134 P 993, 994 (1913); and *Blackwell v. Memphis St. Ry. Co.*, 124 Tenn 516, 521, 137 SW 486, 487 (1911).

Oregon's Tort Claims Act appears to have been based upon Minnesota's act. Minutes, Senate Committee on Judiciary (April 3, 1967, Memorandum of William Juza); Minutes, House Committee on Judiciary (April 3, 1967, Memorandum of William Juza, Separate exhibit file under HB 1624); *see also* Lansing, *The King Can Do No Wrong! The Oregon Tort Claims Act,* 47 Or L Rev 357, 359 (1968). We have stated that "[t]he interpretation another state places upon its statute at the time our legislature incorporates that act into Oregon law is highly persuasive in the absence of a legislative directive that our statute is not to be similarly construed. *Joseph v. Lowery,* 261 Or 545, 550, 495 P2d 273 (1972). *See also Fleischhauer v. Bilstad,* 233 Or 578, 585, 379 P2d 880, 883 (1963), which states:

> "* * * [T]his would seem to be a clear case for application of the presumption that when the legislature adopts the statute of another state it intends to adopt also the construction theretofore placed upon the statute by the highest court of that state. * * *"

Absent a legislative directive or indication that Oregon's adopted statute is not to be similarly construed, we should follow the lead of the Minnesota court. *See, e.g., Meyer v. Ford Industries, Inc.,* 272 Or 531, 538 P2d 353 (1975); *Joseph v. Lowery, supra.* The Minnesota Supreme Court's pronouncement in *White v. Johnson,* 272 Minn 363, 137 NW2d 674 (1965), *see* the majority opinion, 299 Or at 672, is strong authority for construing our statute in a similar manner and allowing contribution from the state.

The majority cites *Urban Renewal Agency v. Lackey,* 275 Or 35, 40, 549 P2d 657, 660 (1976), for the proposition that "[t]he pleading and proof of notice sufficient to satisfy the requirements of ORS 30.275 [are] a mandatory requirement and a condition precedent to recovery under the Oregon Tort Claim Act." 299 Or at 671. In *Urban Renewal Agency,* we held that the notice requirement was met. The quoted statement is dictum.

In *Urban Renewal Agency* we also stated that the Tort Claims Act notice requirements are "to give the public body timely notice of the tort and allow its officers an opportunity to investigate the matters promptly and ascertain all the necessary facts." 275 Or at 41, 549 P2d at 660. This comment of the Minnesota court in *White v. Johnson, supra,* is relevant:

"* * * Although in Szroka v. Northwestern Bell Tel. Co., 171 Minn. 57, 213 N.W. 557, 59 A.L.R. 404, we did state in passing that without notice there is no cause of action against a municipality, the language there used was perhaps too broad to express the simple point to be made that the notice requirements of a city charter should not be circumvented by special laws passed by the legislature. The more precise characterization of the notice requirement is that it is a condition precedent to bringing suit for the practical purpose of quickly informing a municipality of injuries for which it might be liable. Conceptually, the giving of notice is an essential element of the cause of action, but realistically, because of the preexisting right and duty, liability is created at the instant the tort is committed. The city is then subject to a liability, and it is no more unexpected that a city might settle a claim before the giving of notice than that private parties might settle before commencment of suit. We have held that a covenant not to sue secured by one wrongdoer does not destroy the common liability necessary for contribution. And the majority of the courts hold that running of the statute of limitations against one defendant on the plaintiff's claim does not bar a suit for contribution against him. The reasoning underlying these decisions is that joint liability arises the moment the tort is committed and these defenses come into being after the conduct which creates that liability. Moreover, since the right to recover contribution is based on equitable principles and has the objective of compelling joint wrong-doers to share responsibility for damages inflicted by their tortious acts, the conduct of the person from whom contribution is sought ought to control the right to maintain the action. The objective of contribution has equal validity where one of the tortfeasors is a municipal corporation. To permit a personal defense against the injured plaintiff to destroy the right to contribution from a municipality under the circumstances disclosed in this case would not only frustrate the basic aim of permitting recovery between participating tortfeasors but would deny third-party rights against a municipality where the statute creating it neither expressly nor by

fair implication so intends." 272 Minn at 370-71, 137 NW2d at 679. (Footnotes omitted.)

As stated above, even in the absence of any relationship between former ORS 30.275 and the Minnesota statute, the text of former ORS 30.275 lends itself to the result of the Minnesota court's interpretation of its statute, even if not to its reasoning. I agree with the majority that a public body can be liable for contribution under ORS 18.440(1). I dissent, however, because the contribution claim in this case was a claim "on account of" an injury of which the contribution claimant was entitled to give, and gave, the required notice.

Roberts and Jones, JJ., join in this dissenting opinion.